STATE of Wisconsin, Plaintiff-Respondent,

v.

Dell F. STEADMAN, Defendant-Appellant.

Court of Appeals

*No. 89-0233-CR. Submitted on briefs July 11, 1989.—Decided September 13, 1989.*

(Also reported in 448 N.W.2d 267.)

For the defendant-appellant the cause was submitted on the briefs of *Marla J. Stephens,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, with *Sally L. Wellman,* assistant attorney general.

Before Moser, P.J., Sullivan and Fine, JJ.

SULLIVAN, J. Dell F. Steadman appeals from a judgment of conviction for first-degree sexual assault, contrary to sec. 940.225(1)(d), Stats. (1985–86), and two counts of sexual exploitation of a child, contrary to sec. 940.203(2), Stats. (1985–86).[1] After his motions for dismissal and for the suppression of evidence were denied, Steadman stipulated to a court trial based upon the allegations of fact set forth in the criminal complaint. [2] *See Kemp v. State,* 61 Wis. 2d 125, 129–30, 211 N.W.2d 793, 794–95 (1973). The court found Steadman guilty on all three counts.

---

[1]Section 940.225(1)(d), Stats. (1985–86), provides:

Whoever does any of the following is guilty of a Class B felony:

. . ..

(d) Has sexual contact or sexual intercourse with a person 12 years of age or younger.

Section 940.203(2), Stats. (1985–86), provides:

No person may photograph, film, videotape, record the sounds of or display in any way a child engaged in sexually explicit conduct.

[2]The complaint alleged that Steadman had had sexual contact with a seven-year old boy and that Steadman had photographed and videotaped this same boy while the child was engaged in sexually explicit conduct.

On appeal, Steadman challenges the propriety of the investigation and search warrant that yielded the evidence supporting these convictions. He urges three arguments for dismissal of the action: (1) that the circuit court lacked jurisdiction because a necessary element of sec. 940.203(4), Stats. (1985–86), importation, was manufactured by a government sting operation that set up the search situation; (2) that the conduct of the government in securing his conviction was outrageous to the extent that it denied him due process; and, (3) that the search warrant did not allege probable cause and was insufficiently particular. We reject these arguments and affirm the judgment of conviction.

The relevant facts will be set forth as we address each of these arguments.

## JURISDICTION

■ Steadman argues that the circuit court erred by denying his motion to dismiss because the court lacked jurisdiction over this action. Steadman's home was searched, and the evidence was seized as a result of a sting operation carried out by the U.S. and Canadian customs services. The scheme involved a solicitation for Steadman's order of child pornography and the arrangement for its delivery to him. [3] Steadman argues that mailing the materials from Canada fulfilled the importation element of sec. 940.203(4), Stats.,[4] and thereby cre-

---

[3] Canadian Customs mailed Steadman, from Ottowa, Ontario, a bogus advertisement from a fictitious Canadian distributor as part of the sting operation.

[4] Section 940.203(4), Stats. (1985–86), provides:

(4) No person may knowingly produce, perform in, profit from, promote, import, reproduce, advertise, sell, distribute, or possess with intent to sell or distribute, any undeveloped film, photographic

ated improper jurisdiction from which to launch his prosecution. Resolution of this issue involves application of the law to undisputed historical fact. Therefore, we owe no deference to the circuit court. *See Boltz v. Boltz,* 133 Wis. 2d 278, 282, 395 N.W.2d 605, 606 (Ct. App. 1986).

The theory supporting dismissal under the doctrine of "manufactured jurisdiction" is that the government has improperly created an element of the crime which makes it a federal, as opposed to a state, offense. The doctrine does not apply to the case at hand because the crimes with which Steadman was charged were state offenses.

Steadman relies on *United States v. Archer,* 486 F.2d 670 (2nd Cir. 1973), and *United States v. Brantley,* 777 F.2d 159 (4th Cir. 1985), *cert. denied,* 479 U.S. 822 (1986). In *Archer,* the defendants were convicted under the Travel Act, 18 U.S.C. sec. 1952, for using interstate and foreign telephone facilities to further a bribery scheme. The United States Court of Appeals for the Second Circuit reversed the convictions for insufficiency of the evidence. *Archer,* 486 F.2d at 683. In its analysis, the court refused to consider telephone calls that were "provoked" by the government's undercover investigation of the scheme and that would otherwise not have been made. *Id.* at 682. The court held that by enacting the Travel Act, Congress "[d]id not mean to include cases where the federal officers themselves supplied the

---

negative, photograph, motion picture, videotape, sound recording or other reproduction of a child engaging in sexually explicit conduct.

Section 940.203, Stats. (1985–86), was repealed and recreated with no substantive change as secs. 948.05 and 948.01(1) and (7), Stats. (1987–88). 1987 Wis. Act 332, sec. 29.55. The amendments were effective July 1, 1989. 1987 Wis. Act 332, sec. 66a.

interstate element and acted to ensure that an interstate element would be present." *Id.* The court also stated: "[T]he participants' attempt to set up a federal crime for which these defendants stand convicted went beyond any proper prosecutorial role and needlessly injected the Federal Government into a matter of state concern." *Id.* at 672.

Similarly, in *Brantley,* the court reversed convictions for extortion in violation of the Hobbes Act, 18 U.S.C. sec. 1951, when all interstate activity related to the offenses was occasioned by FBI agents involved in an undercover operation. *Brantley,* 777 F.2d at 161–63.

These precedents demonstrate that the manufactured jurisdiction doctrine bears no relevance to the case at hand. The crimes with which Steadman was charged and for which he was convicted are state crimes, and are entirely unrelated to the importation of child pornography to this state. The crux of Steadman's argument is, in essence, that he was denied due process as a result of the government sting operation.

## DUE PROCESS

Steadman argues that he is entitled to a dismissal because his due process rights were violated, U.S. Const. amends. V, XIV, sec. 1; Wis. Const. art. I, sec. 8(1), and that the conviction should be vacated. Steadman contends that the government's involvement provided all the elements for the commission of the crime and that it was a shocking affront to justice. The conceded facts are that in 1985 the U.S. Postal Inspection Service (Service) mailed an application to Steadman for membership in "The Society," a fictitious organization. The Service uses The Society to facilitate investigation of suspects who mail child pornography. Steadman filled out the

membership application and answered a questionnaire which revealed his preference for pre-teen sex. On March 9, 1987, a special agent, and district coordinator of child pornographic investigations for the U.S. Customs Service, Lee E. Wattenbarger, sent Steadman an advertisement from a purported distributor of child pornography in Quebec called Produit Outaouais. This bogus distributor of child pornography was in fact a part of a joint undercover program of U.S. and Canadian Customs. The advertisement listed items of child pornography for sale.

On April 28, 1987, Wattenbarger received Steadman's order through Canadian Customs, and on May 28, Wattenbarger mailed seven sets of photographs to Canadian Customs which delivered the package to DHL Courier Service. DHL forwarded the items to its Rosemont, Illinois, office on June 1, when Wattenbarger picked it up. A U.S. Customs agent delivered the parcel to Steadman's home on July 30, 1987. Within twenty-five minutes, Wattenbarger filed a complaint and supporting affidavit for a search warrant of Steadman's home in Milwaukee. A circuit court judge, acting as magistrate, issued the warrant the same day. The warrant authorized the search for seven described items of pornography and "any other books, magazines, photographs, photocopies . . . depicting children in sexually explicit conduct . . .." The evidence supporting Steadman's convictions under secs. 940.225(1)(d) and 940.203(2), was seized during this search. Again, we are confronted with a legal issue. Do the conceded facts establish constitutional due process violations?

The gist of Steadman's due process argument is that the government, aware that mere possession of pornog-

raphy is no offense,[5] contrived his importation of pornography. He relies on *U.S. v. Russell,* 411 U.S. 423 (1973), in which the Supreme Court stated that a prosecution might violate due process if the enforcement tactics were fundamentally unfair or if they were "shocking to the universal sense of justice." *Id.* at 432.[6] A due process situation may arise where the government itself was so enmeshed in the criminal activity that prosecution of the defendant was held to be repugnant to the American criminal justice system. *See id.* at 428. Although separate concepts, entrapment and government abuse of power find their genesis in due process. The difference is that the entrapment inquiry focuses on the predisposition of the defendant whereas the question of governmental abuse of power focuses on whether the government "instigated the crime." *See id.* at 428–29. Although law enforcement in *Russell* supplied the defendant with the necessary ingredients for the unlawful manufacture of drugs, the court perceived no unfairness or shock to any sense of justice because law enforcement's participation related to criminal activity "already in progress." *Id.* at 431–32.

Steadman insists that he never imported pornography but that law enforcement alone instigated the offense and executed it only because it found his name on a domestic child pornographer's customer list which had been seized in 1984 in the state of Washington.

---

[5]Steadman argues that the government's conduct in this case violated his right to possess pornographic material under *Stanley v. Georgia,* 394 U.S. 557 (1969). *Stanley,* however, does not extend to child pornography. *See New York v. Ferber,* 458 U.S. 747, 756–64 (1982). *Cf.* sec. 948.12, Stats. (1987–88) (possession of child pornography constitutes a Class E felony).

[6]Unlike the defendant in *Russell,* Steadman does not rely on the defense of entrapment.

Steadman invokes *United States v. Twigg,* 588 F.2d 373 (3d Cir. 1978), in which the court determined that the activities of a drug enforcement agency had "reached 'a demonstrable level of outrageousness.' " *Id.* at 380 (quoting *Hampton v. United States,* 425 U.S. 484, 495 n. 7 [1976] [Powell, J., concurring]). The agency solicited commission of the crime, the manufacture of controlled substances, and provided the supplies and expertise to carry it out. It even provided the defendant with solutions to various problems when he had difficulty in consummating the offense. *Id.* at 381.

■
Steadman's reliance on *Twigg,* however, is misplaced. Unlike the scenario of *Twigg,* all the government did for Steadman was to provide him an opportunity, however elaborate, to import child pornography. His due process rights were not violated. Acceptance, signing, and mailing of the order to a destination outside Wisconsin was Steadman's own initiative, unassisted by any direct act of the government. Its actions, we conclude, were not shocking to the universal sense of justice. It was Steadman who committed the crime, albeit the government provided the opportunity.

■
We further subscribe to a plurality U.S. Supreme Court holding that unless the government, in the course of a sting operation, violates a defendant's specific constitutional rights, the proper defense is entrapment. *Hampton v. United States,* 425 U.S. 484, 490 (1976). That Steadman seized the opportunity provided by the sting operation to order the child pornography from outside Wisconsin, and subsequently a search warrant for his home was directed in part to the pornography delivered, does not amount to a violation of fundamental fairness that shocks the universal sense of justice. *See*

*U.S. v. Boffardi,* 684 F. Supp. 1263, 1268 (S.D. N.Y. 1988).

## SEARCH AND SEIZURE

Steadman also contends that his constitutional right to be free from unreasonable searches and seizures[7] was violated in two respects: (1) The affidavit supportive of the search warrant failed to allege probable cause; and (2) items subject to seizure were not described with sufficient particularity. [8]

---

[7] U.S. Const. amends. IV, XIV; Wis. Const. art. I, sec. 11. The fourth amendment to the U.S. Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[8] The search warrant commanded search for the following items:

> There are now located and concealed certain things, to wit: addressed to "Dell Steadman; Milwaukee, WI," bearing return address, "Produit Outaouais, Box 1457, Succ B. Hull, Quebec, Canada, J8X3X3" which contains 4 photo sets of 12 photos each described below:
> Robbe Does (a set of photos depicting nude boys under age 18 years engaged in oral, anal and masturbatory sexual activity);
> Chicken 11 (a set of photos depicting nude boys under age 18 years engaging in oral and masturbatory sexual activity);
> Joe & His Uncle (a set of photos depicting nude boys under age 18 years engaged in oral, anal and masturbatory sexual activity);
> Bambino 6 (a set of photos depicting nude boys under age 18 years engaged in oral and anal sexual activity);
> School Girls & Boys (a set of photos depicting nude boys and girls under age 18 years engaged in oral and anal sexual activity);
> Loving Children 3 (a set of photos depicting nude girls under age 18 years engaged in lewd genitalia exhibition and fondling);
> Lolli Pops 2 (a set of photos depicting nude boys under age 18 years engaged in oral, anal and masturbatory sexual activity): which

■

Both the United States and Wisconsin constitutions protect citizens against unreasonable searches and seizures. Except for irrelevant grammatical differences, the provisions are identical. *State v. Frey,* 131 Wis. 2d 153, 172, 388 N.W.2d 565, 573 (1986), *cert. denied,* 479 U.S. 989 (1986). In *State v. Tompkins,* 144 Wis. 2d 116, 131, 423 N.W.2d 823, 829 (1988), the supreme court stated: "[W]e have consistently conformed the law of search and seizure under the Wisconsin Constitution to that developed by the United States Supreme Court under the federal constitution."

■

Our review of the magistrate's decision to issue the search warrant is independent from that of the circuit court. *Id.* at 121, 423 N.W.2d at 825. Our inquiry is limited, however, to whether the magistrate had a substantial basis for finding that probable cause existed. In *State v. Anderson,* 138 Wis. 2d 451, 468, 406 N.W.2d 398, 406 (1987), the Wisconsin supreme court adopted the "totality of circumstances" test of *Illinois v. Gates,* 462 U.S. 213 (1983). In *Gates,* the U.S. Supreme Court set forth the probable cause test:

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the

were previously ordered by Dell Steadman on March 24, 1987[,] and other books, magazines, photographs, photocopies, videotapes, motion pictures, undeveloped film, and negatives, depicting children engaged in sexually explicit conduct as those terms are defined in sec. 940.203(4), Stats.

duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Gates,* 462 U.S. at 238–39.

We experience no difficulty in determining that the magistrate had probable cause to issue the warrant. Wattenbarger, a special agent with the U.S. Customs Service since 1983, signed the complaint for a search warrant and a nine-page supplemental affidavit.[9] His investigative experience revealed a child pornographer's penchant for keeping materials at home for personal gratification. The affidavit also demonstrated that these items are not generally found in ordinary pornography shops. Wattenbarger had been informed by another agent that Steadman's name had been spotted on a customer list maintained by a pornography distributor in Redmond, King County, Washington. The magistrate could readily infer that Steadman may have imported materials from that state, particularly because his answers to the questionnaire mailed to him by the Postal Inspection Service indicated his preference for pre-teen sex literature. Given these facts, the magistrate could readily conclude that a search of Steadman's home would turn up imported pornographic materials depicting children engaged in explicit sexual conduct.

Steadman argues that probable cause was not established as to any seized materials except those from

9Wattenbarger had been a special agent for the U.S. Secret Service for three years prior to 1983, and for five years before that was a Skokie, Illinois police officer. His affidavit further asserts that at the time the warrant issued, he was district coordinator for child pornography investigations and had been involved in over fifty investigations.

Canada. We reject his postulate that the word "imported" in sec. 940.203(4), Stats., refers to foreign nations and not Wisconsin's sister-states. While it does not prohibit possession of child pornography, subsection (4) was purposed to prevent the increase of these materials in Wisconsin, whether the materials come from a sister-state or a foreign country. Under sec. 940.203(4) importation is barred, whether the materials come from Illinois or Timbuktu.[10]

Steadman also insists that the catch-all language at the end of the warrant renders it unconstitutionally indefinite. He argues that this general language vests authorities with power to rummage at will through all of his papers, a practice condemned in *Go-Bart Importing Co. v. U.S.*, 282 U.S. 344, 358 (1931). Steadman asserts the general clause is based on suspicion and is overbroad, and therefore is the equivalent of a general exploratory warrant. He faults the warrant for failing to instruct the persons executing it as to what materials are subject to it.

We reject this argument. We adopt the position of the weight of authority which upholds the fourth amendment validity of search warrants authorizing seizure of imported child pornography which displays children in explicit sexual conduct as defined by the statutes. [11] *U.S. v. Wiegand*, 812 F.2d 1239, 1243 (9th Cir. 1987). Should

[10]*See generally State v. Bruckner*, 151 Wis. 2d 833, 447 N.W.2d 376 (Ct. App 1989). (Publication ordered Sept. 28, 1989; petition for review denied Oct. 17, 1989.)

[11]The warrant erroneously cites sec. 940.203(4), Stats., in definition of these terms. It does not refer to sub. (6) wherein these terms are defined. Reference to the statute is not flawed by the failure to cite the proper subdivisions.

materials in legal possession[12] be seized along with proscribed imported items, the former may be returned:

> No intrusion on a First Amendment right would occur if legally-possessed child pornography were seized along with criminal contraband. The remedy for the wrong would be return of the legal material not suppression of the evidence.

*Wiegand,* 812 F.2d at 1243.

*By the Court.*—Judgment affirmed.

---

[12]*See supra* note 5.