STATE of Wisconsin, Plaintiff-Appellant,

v.

Randall J. GIBAS, Defendant-Respondent.†

Court of Appeals

*No. 93–1951–CR. Submitted on briefs March 8, 1994.—Decided April 27, 1994.*

(Also reported in 516 N.W.2d 785.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Kenneth R. Kratz*, district attorney.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Eric S. Erdmann* and *Roxanne F. Felizmena* of *Schellinger & Associates* of Brookfield.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J.   Randall J. Gibas successfully argued before the trial court that charges of aiming and pointing a weapon should be dismissed with prejudice

against him because the State was guilty of outrageous governmental conduct. Essentially, Gibas argued that the defense of outrageous governmental conduct recognized in *United States v. Russell*, 411 U.S. 423 (1973), applies to this case because the Wisconsin Department of Justice (DOJ) intimidated several defense witnesses.[1] Because the facts of this case do not fit the paradigm of an outrageous governmental conduct defense as illustrated by case law, we reverse.

Gibas, a DOJ narcotics agent, was on stakeout with a female agent. He allegedly pointed his revolver at her while in the stakeout car and ordered her to remove her clothes. The female agent reported the incident to her superiors and Gibas was suspended.

The DOJ forwarded the information to the Calumet County Sheriff. The sheriff's department did its own investigation and, based upon this information and information supplied by the DOJ, the district attorney decided to charge Gibas with aiming and pointing a weapon.

Before trial, Gibas moved to dismiss on various grounds. All were denied save one. The trial court ruled in favor of Gibas' claim that the State was guilty of outrageous governmental "misconduct."

Gibas contended that: (1) the DOJ "directed" the district attorney to file a complaint—a claim denied by the district attorney; (2) following the issuance of the complaint, the DOJ superiors subtly threatened Gibas' fellow workers with reprisals if they either helped Gibas prepare his case or testified as character witnesses on his behalf; and (3) the DOJ and the district attorney were in continuous contact even after the complaint was issued, whereby the district attorney

---

[1] Following our certification of this issue, the Wisconsin Supreme Court declined to take jurisdiction over this appeal.

asked about possible *Whitty* evidence and other administrative matters pertaining to Gibas.

The trial court conducted an evidentiary hearing and then ruled that: (1) the district attorney made the *initial* charging decision in a "political vacuum, free of influence" and (2) during the course of prosecution, the DOJ had "an independent problem and agenda" concerning Gibas and its "continued involvement, with respect to submitting correspondence to the [district attorney's] office, conferring with prospective witnesses, handicapping or hindering prospective witnesses and exerting influence on the prosecution . . . subsequent to that independent charging document . . . unlawfully taints the prosecution." The trial court found a due process violation and dismissed the case with prejudice.

The issue in this case requires us to examine the defense of outrageous governmental conduct as set forth in *United States v. Russell*, 411 U.S. 423 (1973). In dictum, the Court stated that it "may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Id.* at 431-32. The Court further stated that the conduct must violate that " 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment." *Id.* at 432 (quoting *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246 (1960)). However, to date, this defense has never been applied successfully in a case before the United States Supreme Court.

In Wisconsin, our supreme court has never considered the validity of the defense of outrageous governmental conduct. However, the court of appeals

of Wisconsin has twice recognized the existence of the defense. In *State v. Steadman*, 152 Wis. 2d 293, 448 N.W.2d 267 (Ct. App. 1989), the court stated that a due process violation could arise if the government was so enmeshed in a criminal activity that the prosecution of the defendant would be repugnant to the American criminal justice system. *Id.* at 301, 448 N.W.2d at 271. The court appeared to require that the government instigate a crime in order for the defense to be successful. *Id.* Additionally, the court stated that the outrageous conduct must violate a specific constitutional right of the defendant. *Id.* at 302, 448 N.W.2d at 271. Finally, the court stated that the question of whether the government violated due process by its conduct was a legal question. *Id.* at 300, 448 N.W.2d at 271.

The court in *State v. Hyndman*, 170 Wis. 2d 198, 488 N.W.2d 111 (Ct. App. 1992), reaffirmed its decision in *Steadman* by stating that the question of whether the defense applied to a given situation was a determination of constitutional fact. *Hyndman*, 170 Wis. 2d at 207-08, 488 N.W.2d at 115. The court in *Hyndman* stated that the appellate court was to review the decision of the trial court, without deference to its determination. *Id.* Therefore, in Wisconsin, it appears that: (1) the standard of review for the defense is de novo, (2) the defendant must assert that the State violated a specific constitutional right, and (3) the government's conduct must be so enmeshed in a criminal activity that prosecution of the defendant would be repugnant to the American criminal justice system.

There have been only two cases at the federal level where the defendant has successfully used the defense of outrageous governmental conduct. Both of these

cases support the proposition that the government's conduct must be enmeshed in criminal activity in order for the defense to apply. In *Greene v. United States*, 454 F.2d 783 (9th Cir. 1971), the court reversed the defendants' convictions on charges involving possession of unregistered distilling apparatus, sale without stamp of distilled spirits, and conspiracy. The court implicitly[2] found that the defense of outrageous governmental conduct applied to the defendants because the government involved itself so directly and continuously over a long period of time in the creation and maintenance of criminal operations. *Id.* at 787.

In *United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978), the court reversed a defendant's conviction on charges stemming from the manufacture of "speed" because the conduct of the government violated "fundamental fairness." *Id.* at 381-82. The court reasoned that the government's conduct was outrageous because the Drug Enforcement Administration had generated the new crime by the defendant merely for the sake of pressing criminal charges against him. *Id.* Therefore, the defense of outrageous governmental conduct has only been successful at the federal level when the government was enmeshed in criminal activity.

---

[2] The defense of outrageous governmental conduct is different from entrapment. A defense of entrapment requires that the defendant not be predisposed to commit the crime in question. *Greene v. United States*, 454 F.2d 783, 786 (9th Cir. 1971). However, the disposition of the defendant is irrelevant under the defense of outrageous governmental conduct. The conduct of the government and not that of the defendant is the issue. The court in *Greene* implicitly recognized the defense of outrageous governmental conduct because it stated that the defendants had a predisposition to commit the crime in question, and therefore, entrapment was not available. *Id.*

■ Although Gibas has alleged a specific violation of his due process rights, his defense fails because the State's conduct here was not enmeshed in criminal activity. The trial court found a violation of due process because the DOJ: (1) submitted correspondence to the district attorney's office, (2) conferred with prospective witnesses, (3) handicapped or hindered prospective witnesses, and (4) exerted influence on the prosecution of the case. None of these reasons involved the government in criminal operations.

The crux of Gibas' defense was the alleged "intimidation" of prospective defense witnesses. A prospective defense witness at the DOJ was cautioned not to get involved in testifying for Gibas because "management [at the DOJ] has long memories." Another prospective defense witness was reprimanded for assisting Gibas during company time. Additionally, another prospective defense witness indicated that he felt intimidated by a DOJ employee. Although these actions by the DOJ are troubling, they certainly do not enmesh the State in criminal activity. The State did not create nor was it involved in the incident which led to the charges against Gibas. Thus, Gibas does not meet the requirement set out in *Steadman,* nor are the facts of his case similar to those of *Greene* and *Twigg,* the only cases where the defense of outrageous governmental conduct has been successfully applied.[3]

---

[3] Another panel of this court released *State v. Albrecht,* 184 Wis. 2d 287, 516 N.W.2d 776 (Ct. App. 1994), on the day before this decision was released. That case also concerns a claim of outrageous governmental conduct. The rationale expressed in that case does not conflict with this decision, but rather compliments it.

We do not imply here that a defendant has no recourse when the government intimidates witnesses to the point that the defendant's right to present a defense is compromised. The United States Supreme Court has recognized that if the government arbitrarily prevents a defendant from presenting a witness' testimony, the defendant's Sixth Amendment right to have compulsory process for obtaining witnesses in his or her favor may be violated. *See, e.g., Washington v. Texas*, 388 U.S. 14, 23 (1967). Additionally, suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, regardless of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *State v. Amundson*, 69 Wis. 2d 554, 577, 230 N.W.2d 775, 787 (1975); and *Bray v. Peyton*, 429 F.2d 500, 501 (4th Cir. 1970), illustrate these principles.

In *Bray*, four witnesses were going to testify on behalf of the defendant. However, before the trial, the prosecutor deliberately had one of the witnesses arrested on another charge. Two of the remaining witnesses were intimidated by this arrest and did not testify. *Bray*, 429 F.2d at 501. The court held that the prosecuting official obstructed the defendant's offer of exculpating proof and it was inherently prejudicial, violating the defendant's due process. *Id*. The court ordered a new trial for the defendant. *Id*. at 502.

We acknowledge that although Gibas has never raised a *Bray*-type argument either in the trial court or this court, we may affirm for reasons other than those announced by the trial court. *State v. Holt*, 128 Wis. 2d 110, 124-25, 382 N.W.2d 679, 687 (Ct. App. 1985). Still, there are two reasons why we decline to use *Bray* here.

363

First, there has been no showing by Gibas that any prospective defense witnesses would have been prevented from testifying at trial. The fact that his prospective witnesses testified at the pretrial motion hearing indicates that any "intimidation" by the DOJ was unsuccessful and that the prospective witnesses would have been available to testify at trial. Therefore, the tactics used by the DOJ have not prejudiced Gibas—at least up to this point. Second, the remedy in *Bray* was a new trial, not dismissal of the charges with prejudice. Gibas has not yet had his trial. We will not use *Bray* to affirm the trial court.

■

We conclude that the defense of outrageous governmental conduct should not apply in Gibas' case because the government has not enmeshed itself in criminal activity. Additionally, although the DOJ's conduct was not commendable, it did not rise to the level that "shocks our conscience." Finally, Gibas' right to put on a defense was not violated because there was no prejudice established against him. We reverse and remand for further proceedings not inconsistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.