**2020 WI App 13**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:         2018AP2324-CR

†Petition for Review filed

Complete Title of Case:

**STATE OF WISCONSIN,**

        **PLAINTIFF-RESPONDENT,**

    **V.**

**THOMAS MICHAEL BARRETT,**

        **DEFENDANT-APPELLANT.†**

| | |
|---|---|
| Opinion Filed: | February 4, 2020 |
| Submitted on Briefs: | November 5, 2019 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Brash, P.J., Dugan and Donald, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the brief of *Adam Welch* of *Stroud, Willink & Howard, LLC* of Madison. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Lisa E.F. Kumfer*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

COURT OF APPEALS
DECISION
DATED AND FILED

February 4, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2018AP2324-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2011CF3855

**IN COURT OF APPEALS**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

THOMAS MICHAEL BARRETT,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County:  JONATHAN D. WATTS and T. CHRISTOPHER DEE, Judges. *Affirmed*.

Before Brash, P.J., Dugan and Donald, JJ.

¶1    DONALD, J. Thomas Michael Barrett appeals a judgment of conviction, following a jury trial, of one count of possession of a firearm silencer,

contrary to WIS. STAT. § 941.298(2) (2017-18).[1]  Barrett also appeals from the order denying his postconviction motion for relief.

## BACKGROUND

¶2    On August 16, 2011, Barrett was charged with one count of possession of a firearm silencer.  According to the criminal complaint, Barrett purchased a semiautomatic .22 caliber handgun with an attached silencer from M.B., a confidential informant working with the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).  The complaint states that M.B. had a series of recorded phone conversations with Barrett regarding the sale of two firearms, one of which had an attached silencer.  During the phone conversations, Barrett acknowledged the illegality of the silencer, but agreed to meet M.B. in the parking lot of a local shopping mall to look at the firearms.  Law enforcement monitored the meeting by video and audio recording and by surveillance.  The complaint states that Barrett told M.B. that the silencer was "highly, highly, highly, highly illegal," calling it a "hit man's gun," but told M.B. that if caught with a silencer, he would simply "say I was going to dispose of it[.]"  Barrett purchased two firearms and the silencer, but removed the silencer from the .22 caliber firearm and placed it in a separate metal box.  Recordings from the meeting show that Barrett, an attorney, told M.B.:

> I ain't even going to put that in the same box....  That way they [the police] have to have a warrant to get in there on my way home….  I put it in a metal box.  They can't x-ray that fucker without a warrant and then … I can say, well I was just going to destroy it for a client[.]  Then we're protected by attorney-client privilege.  They can never get the shit out of me!

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Barrett placed the firearms and silencer in the trunk of his car, and was subsequently arrested and charged.

## I. Pretrial Constitutional Challenges

¶3      Barrett filed a motion to dismiss the charge on the grounds that WIS. STAT. § 941.298, the statute generally prohibiting the possession of firearm silencers, was facially unconstitutional.      Barrett argued that the statute "impermissibly infring[es] upon the fundamental right to keep, use and bear arms under the Federal and Wisconsin Constitutions[.]"      Barrett also argued that the statute was void for vagueness.      At a hearing on the motion, the trial court[2] found "that there is absolutely no basis for this motion to dismiss and that the statute is perfectly constitutional."      Specifically, the trial court found that silencers do not constitute firearms and that "the right to keep and bear arms is totally separate from a silencer[.]"

¶4      Barrett, by new counsel, filed a subsequent motion challenging the constitutionality of WIS. STAT. § 941.298 on its face and as applied to him, arguing that the trial court did not address the vagueness argument in his first motion. Barrett's motion argued that "[t]he statute does not give fair warning to those wishing to obey the law.  The language of the statute is vague in that it arguably includes *any* object that has the effect of muffling the report of the firearm."  The trial court[3] again rejected Barrett's constitutional challenge.  In a written decision, the trial court stated that Barrett "cannot show that there are no possible applications or interpretations of the statute which would be constitutional."  As to Barrett's as-

---

[2]  The Honorable Charles F. Kahn presided over Barrett's motion to dismiss.

[3]  The Honorable Jonathan D. Watts presided over this motion and Barrett's trial.

applied argument, the trial court found that Barrett lacked standing to challenge the statute's constitutionality because "a defendant who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." The trial court found that under the facts of the case, Barrett's conduct constituted the exact conduct prohibited by the statute.

## II. Proceedings Related to M.B.

¶5 Pretrial, the State filed a witness list naming M.B. as one of its potential witnesses. The State did not provide M.B.'s address, but stated that it "will assist the defense with personal service of this individual." Barrett, however, attempted to subpoena M.B. himself by hiring a private investigator, Gary Wait, who posed as a gun dealer willing to sell firearms to felons. M.B., unaware that Wait was actually a private investigator, notified the Milwaukee Police Department and the ATF, informing them that he was contacted by an individual willing to sell firearms to prohibited persons. At the law enforcement departments' instruction, M.B. recorded his conversations with Wait. Wait met with M.B., identified himself as a private investigator, and served M.B. with a subpoena.

¶6 Barrett then filed a motion to admit other acts evidence that "M.B. offered numerous inducements to Wait to purchase firearms, even though Wait had never mentioned that he was interested in purchasing firearms." The crux of the motion was that evidence of M.B.'s "inducements" to Wait supported a defense of entrapment. Specifically, Barrett argued that "evidence of M.B.'s efforts to induce Wait to purchase firearms is admissible to establish that it was M.B.'s plan to induce Barrett to possess the allegedly illegal pistol." The trial court conditionally granted the motion, allowing the introduction of other acts evidence if the defense first introduced some evidence showing that M.B. induced Barrett to buy the silencer so

as to put the entrapment defense at issue. The matter proceeded to trial where neither party called Wait as a witness.

### III. Trial

¶7 Barrett testified in detail about his conversations with M.B., his meeting with M.B., and his thought process during the meeting. Barrett stated that a former client, who was aware of Barrett's affinity for gunsmithing, told Barrett that he knew of someone with guns for sale (M.B.) and that Barrett would be hearing from him. Barrett stated that M.B. then began "pestering" him with phone calls. Barrett stated that he expressed interest in purchasing a Glock from M.B. Barrett testified that he and M.B. had multiple conversations about the firearms M.B. had for sale, a result of M.B. "calling and calling," and that M.B. mentioned having a silencer. Barrett stated that he was unsure of whether M.B. had a real silencer, but nonetheless offered to help M.B. dispose of it. Barrett stated that when he actually met M.B., M.B. did not show him the firearms they had discussed, prompting Barrett to believe he was "being set up to be robbed[.]" Barrett testified that M.B. showed him a firearm with a silencer, but was still unsure of whether the silencer was real, and that he decided to "play along," so as not to anger M.B. Barrett stated that M.B. "wouldn't let [him] go" and essentially forced the sale of the firearm with the attached silencer. Barrett stated that he made the purchase in hopes of "getting out of there" and planned to dispose of the silencer. Barrett testified that he was arrested before he had an opportunity to explain himself.

¶8 The jury found Barrett guilty as charged. Barrett was sentenced to five months in the House of Correction with Huber release.

5

### IV.     Postconviction

¶9     Barrett filed a postconviction motion again raising constitutional challenges to WIS. STAT. § 941.298.   Barrett argued that the statute was unconstitutional on its face and as applied to him because it infringed on his right to keep and bear arms and was void for vagueness.   Barrett also argued that his conviction resulted from "outrageous government conduct" because "the government … induc[ed] Barrett to take possession of the alleged silencer and … intimidat[ed] one of Barrett's key trial witnesses."   (Bolding and capitalization omitted.)   Barrett argued that the State intimidated Wait out of testifying by threatening Wait with potential criminal charges.   Barrett attached a letter to Wait from one of Barrett's trial attorneys, in which counsel said:

> After a brief off-the-record discussion with [the State], it is my understanding that a number of individuals, to include the Milwaukee County District Attorney … contemplated making an arrest for criminal charges against you with respect to the investigation and service of process that you undertook of the then confidential informant, [M.B.]   Further, it is my understanding that this same decision-making process may be reinstigated should you testify in Mr. Barrett's case.

Barrett also attached an affidavit from Wait, in which Wait stated that government threats intimidated him out of testifying.

¶10     The postconviction court[4] rejected Barrett's constitutional challenges, stating that the trial court already dealt with those issues.  The postconviction court also stated that Barrett's motion sought to relitigate his entrapment defense, which the postconviction court said it would "not entertain[.]"     However, the

---

[4] The Honorable T. Christopher Dee denied Barrett's postconviction motion.

postconviction court ordered the State to respond, in a brief, to Barrett's claim that the State threatened Wait.

¶11 The State responded that the record did not support Barrett's argument. The State noted that defense counsel's letter to Wait focused on counsel's personal understanding of his off-the-record conversation with the State and was not based on any definitive information obtained from the State. The State also noted that Barrett's other acts motion, in which Barrett argued that Wait should be allowed to testify, was brought after Wait received the letter from defense counsel, suggesting that Wait was still willing to testify. The State further noted that the trial court held multiple evidentiary hearings—after Wait received the letter—in which the subject of Wait's potential testimony was addressed. Barrett did not raise the issue of witness intimidation at any of the hearings. Barrett informed the postconviction court—again, after Wait received the letter—that Wait was prepared to testify.

¶12 The postconviction court denied Barrett's claim of outrageous government conduct. This appeal follows.

**DISCUSSION**

¶13 On appeal, Barrett raises the issues that he raised in his postconviction motion. He contends that: (1) WIS. STAT. § 941.298 is an unconstitutional infringement upon the right to keep and bear arms, both facially and as applied; (2) § 941.298 is void for vagueness; and (3) the government engaged in outrageous conduct by pressuring Barrett to commit a crime and by intimidating Wait.

### I.    Constitutional Challenges[5]

¶14    The constitutionality of a statute presents a question of law that we review *de novo*. *See State v. Hamdan*, 2003 WI 113, ¶19, 264 Wis. 2d 433, 665 N.W.2d 785; *see also State v. Cole*, 2003 WI 112, ¶10, 264 Wis. 2d 520, 665 N.W.2d 328. In construing a statute, we give effect to the legislature's intent, using the plain meaning of the words of the statute. *See Cole*, 264 Wis. 2d 520, ¶10. Statutes are presumed constitutional and will be sustained unless the challenger proves, beyond a reasonable doubt, that there is no possible application or interpretation of the statute which would be constitutional. *Id.*, ¶¶11, 18. "A statute may be facially unconstitutional, meaning that it operates unconstitutionally under all circumstances." *State v. Herrmann*, 2015 WI App 97, ¶6, 366 Wis. 2d 312, 873 N.W.2d 257. "Alternatively, a statute may be unconstitutional as applied, meaning that it operates unconstitutionally on the facts of a particular case or with respect to a particular party." *Id.* Barrett raises both facial and as-applied challenges to the constitutionality of WIS. STAT. § 941.298.

*A. WISCONSIN STAT. § 941.298 is constitutional.*

¶15    With certain exceptions, WIS. STAT. § 941.298 prohibits the sale, delivery, and possession of firearm silencers. *See id*. The statute, as relevant, provides:

> (1) In this section, "firearm silencer" means any device for silencing, muffling or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating

---

[5] Barrett argues that to the extent his defense counsel failed to adequately raise his constitutional challenges, counsel provided ineffective assistance. We decline to address counsel's catch-all, undeveloped argument. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (we do not address undeveloped arguments).

> such a device, and any part intended only for use in that assembly or fabrication.
>
> (2) Whoever sells, delivers or possesses a firearm silencer is guilty of a Class H felony.

Sec. 941.298(1)-(2).

¶16    Barrett's first argument is that WIS. STAT. § 941.298, on its face, violates the Second Amendment to the United States Constitution. The Second Amendment of the United States Constitution states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." *See* U.S. CONST. amend. II.

¶17    In evaluating challenges to the Second Amendment, we employ "a two-step approach[.]" *See Herrmann*, 366 Wis. 2d 312, ¶9. First, we ask "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *See id.* (citation omitted). If it does not, the inquiry is complete; if it does, we must "evaluate the law under some form of means-end scrutiny." *See id.* (citation omitted). In other words, we must inquire into "the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *See id*. (citation omitted).

¶18    Barrett's facial unconstitutionality argument is principally based on *District of Columbia v. Heller*, 554 U.S. 570 (2008), in which the United States Supreme Court invalidated a District of Columbia handgun ban under the Second Amendment, holding that the amendment protected "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 595, 634-35. Under *Heller*, "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms[.]" *Id.* at 582. Barrett's argument centers upon his

9

contention that firearm accessories, including silencers, are "instruments" constituting bearable arms. Barrett's reliance on *Heller* is misplaced.

¶19    *Heller* stated that the definition of "arms" protected by the Second Amendment is the same today as it was in the eighteenth century; that is, "[w]eapons of offence, or armour of defen[se]" or "any thing that a man wears for his defen[se], or takes into his hands, or use[s] in wrath to cast at or strike another." *Id.* at 581 (citations omitted; first set of brackets in *Heller*). The Court recognized that "the Second Amendment is not unlimited," and does not include the "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. It also recognized that the Second Amendment protects only "the sorts of weapons ... in common use," and does not extend to "dangerous and unusual weapons" "not typically possessed by law-abiding citizens for lawful purposes[.]" *Id.* at 625-27 (citations omitted).

¶20    A silencer does not fall within the definition of "arms" contemplated by *Heller*—it is not used as a defense nor is it, in and of itself, used to "cast at or strike another." *See id.* at 581 (citation omitted). A silencer does not serve any intrinsic self-defense purpose nor is it "typically possessed by law-abiding citizens for lawful purposes[.]" *See id.* at 625. Silencers, therefore, are not "arms."

¶21    Relying also on *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), Barrett argues that a silencer is nonetheless protected by the Second Amendment because it is necessary to the effective operation of a firearm. In *Ezell*, the Court of Appeals for the Seventh Circuit invalidated a Chicago ordinance banning firing ranges in the City despite the City's requirement of firing-range training for lawful gun ownership. *Id.* at 691. The *Ezell* court explained that firing ranges were not "categorically unprotected by the Second Amendment" because "[t]he right to

possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." *Id.* at 704. Barrett contends that a ban on silencers likewise infringes upon the right of citizens to acquire and maintain proficiency in the use of firearms, particularly with regard to hunting, where silencers can be beneficial. Barrett's reliance on *Ezell* is also misplaced.

¶22 Barrett points to no evidence suggesting that firearms cannot be effectively used without silencers. He simply points to activities which would be enhanced by silencer usage, but that are not dependent upon such usage. Unlike the facts in *Ezell* where the use of firing ranges was mandatory for lawful gun ownership and necessary for maintaining proficiency in firearm usage, nothing about the use of silencers is mandatory for effective firearm usage.

¶23 Because we conclude that WIS. STAT. § 941.298 does not impose a burden on conduct falling within the scope of the Second Amendment's guarantee, we need not evaluate the legislature's justification for restricting or regulating silencers. *See Herrmann*, 366 Wis. 2d 312, ¶9. Accordingly, we conclude that § 941.298 is not unconstitutional either facially or as applied to Barrett.

*B. WISCONSIN STAT. § 941.298 is not void for vagueness.*

¶24 Barrett next contends that WIS. STAT. § 941.298 is impermissibly vague because its prohibitions are not clearly defined.

¶25 The "void for vagueness" doctrine is grounded in procedural due process. *See State v. Driscoll*, 53 Wis. 2d 699, 701-02, 193 N.W.2d 851 (1972). "[A] statute is void for vagueness if it does not provide 'fair notice' of the prohibited conduct and also provide an objective standard for enforcement of violations." *State*

11

*v. Smith*, 215 Wis. 2d 84, 91, 572 N.W.2d 496 (Ct. App. 1997). "Stated another way, '[t]he first prong of the vagueness test is concerned with whether the statute sufficiently warns persons wishing to obey the law that [their] … conduct comes near the proscribed area.'" *Id.* (alteration in *Smith*; citations and one set of quotation marks omitted). However, a statute "need not define with absolute clarity and precision what is and what is not unlawful conduct." *State v. Nelson*, 2006 WI App 124, ¶36, 294 Wis. 2d 578, 718 N.W.2d 168 (citations omitted). A statute is not void for vagueness merely because its applicability may be uncertain in some situations. *Id.*

¶26     Furthermore, "if the alleged conduct of a defendant plainly falls within the prohibition of the statute, the defendant may not base a constitutional vagueness challenge on hypothetical facts, unless a First Amendment right is at issue." *Smith*, 215 Wis. 2d at 91. In other words, "a defendant who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others, absent an impact on a First Amendment right…. [I]f an actor's conduct plainly falls within the proscription of the law, he cannot make a vagueness challenge." *Id.*

¶27     Barrett contends that Wis. Stat. § 941.298 fails to "give citizens fair notice of what types of items are prohibited[.]" We reject Barrett's arguments for two reasons. First, Barrett injects ambiguity into the statute where none exists. Second, Barrett's conduct clearly fell within the parameters of § 941.298.

¶28     Wisconsin Stat. § 941.298 defines "firearm silencer" as "any device for silencing, muffling or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating such a device, and any part intended only for use in that assembly or

12

fabrication." *See id.* The word "device" has the commonly accepted meaning of "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function."[6] *See Meyers v. Bayer AG*, 2007 WI 99, ¶23, 303 Wis. 2d 295, 735 N.W.2d 448 ("We apply the language of the statute as written, giving the words their commonly accepted meanings."). Barrett's argument is centered on the fact that the statute does not identify *who* must intend that the device is for silencing. The statute is not concerned with who possesses a silencer or why; the statute deals with silencers in and of themselves. The statute clearly states that any device used for silencing—whether it was manufactured as a silencer or not—is prohibited by the statute unless a party is registered to own such a device. We agree with the State's succinct explanation:

> A person wanting to conform to the law knows that he or she may not possess any piece of equipment designed for the purpose of silencing, muffling, or diminishing the report of a firearm. The statute also alerts persons that it is illegal to possess any combination of parts intended to create a piece of equipment designed for the purpose of silencing, muffling, or diminishing the sound of a firearm, or to possess any single part intended only for use in creating a piece of equipment for that purpose. Finally, the statute clearly provides that a person may legally possess any of these things if he or she complies with the licensing and registration requirements for owning silencers, and directs the person who wants to possess such things to those licensing and registration requirements[.]

The statute plainly sets forth the conduct it proscribes.

¶29 Moreover, Barrett cannot contend that the statute is unconstitutionally vague because his conduct plainly fell within the scope of the statute. Barrett does not assert a First Amendment right to possess a silencer, therefore, we only review

---

[6] *Device*, Merriam-Webster Online Dictionary, https://merriam-webster.com/dictionary/device (last visited Jan. 31, 2020).

13

whether the statute gave Barrett notice that the item he was purchasing from M.B. was prohibited. The record establishes that Barrett recognized the illegality of the silencer. Recorded phone conversations between Barrett and M.B. reveal that Barrett called silencers "highly, highly, highly, highly illegal" and "a hit man's gun." Barrett testified that he recognized the device M.B. showed him as a silencer. Barrett came to the meeting with M.B. with a metal lockbox for storing the silencer, telling M.B. that law enforcement would need a warrant to search the box. Barrett also told M.B. that he was an attorney and would be able to concoct a story about disposing of the device if need be. Accordingly, Barrett's argument that WIS. STAT. § 941.298 is unconstitutionally vague fails.

## II. Outrageous Government Conduct

¶30 Finally, Barrett argues that his conviction resulted from outrageous government conduct. Specifically, Barrett contends that: (1) he was targeted by M.B. and induced to commit a crime; and (2) the State intimidated a key witness, Wait.[7]

¶31 The defense of outrageous governmental conduct requires an assertion by the defendant that the State violated a specific constitutional right and that the government's conduct was "so enmeshed in a criminal activity that the prosecution of the defendant would be repugnant to the American criminal justice system." *See* ***State v. Gibas***, 184 Wis. 2d 355, 360, 516 N.W.2d 785 (Ct. App. 1994). Unlike the defense of entrapment, which requires that the defendant not be predisposed to commit the crime, the defense of outrageous government conduct,

---

[7] The State argues that Barrett has forfeited this argument by not raising it with the trial court. Because the postconviction court addressed Barrett's arguments on the merits, we do the same.

or government abuse, focuses on whether the government instigated the crime. ***State v. Steadman***, 152 Wis. 2d 293, 301, 448 N.W.2d 267 (Ct. App. 1989).

¶32 With regard to Barrett's first claim, we conclude that Barrett's arguments reflect the defense of entrapment, not outrageous government conduct. Throughout his brief, Barrett discusses his lack of interest in a silencer, a government sting operation, and what he perceives to be the government's efforts to turn him into a felon. In essence, Barrett argues that he was not predisposed to commit the crime—the heart of an entrapment defense. On the contrary, the outrageous government conduct defense requires a defendant to demonstrate that the State violated a specific constitutional right and was embroiled in criminal activity. *See **Gibas***, 184 Wis. 2d at 360. Because Barrett has neither asserted a specific constitutional right violated by the sting operation, nor demonstrated that the State was involved in criminal activity, he has not met his burden of establishing outrageous government conduct.

¶33 As to Barrett's second claim, Barrett contends that the State violated his Sixth Amendment right to compulsory process by intimidating one of his witnesses and preventing the witness from testifying. Barrett relies on two exhibits from the record to support his claim—a letter from his then-defense counsel to Wait, and an affidavit from Wait stating his apprehension to testify because of "threats from the government." Neither exhibit supports Barrett's assertion.

¶34 The letter from Barrett's counsel to Wait does not describe any activity suggesting that the State was "enmeshed in criminal activity" or violated any of Barrett's constitutional rights. *See **id.*** Rather, the letter describes counsel's personal *understanding* of a brief, off-the-record, conversation with the State. Counsel's interpretation of a discussion with the State is not proof of outrageous

government conduct; indeed, the letter does not even describe any definitive State conduct. It simply states that the State "contemplated" arresting Wait for his role in attempting to serve M.B. with a subpoena. The State did not take any action against Wait to prevent him from testifying—no arrest was made, no charges were issued. A vague letter based on an off-the-record conversation that does not describe an actual threat is insufficient to establish outrageous government conduct.

¶35    Wait's affidavit is also insufficient to support Barrett's claim. Wait's four paragraph affidavit does not describe any threatening State conduct, nor does it describe any personal interaction between Wait and the State. It simply states that defense counsel alerted Wait to the possibility of a criminal investigation or criminal charges. Moreover, after defense counsel sent the letter to Wait, the trial court held multiple hearings in which the subject of Wait's potential testimony was addressed. Barrett did not raise concerns about witness intimidation at any of those hearings, nor did the State address the possibility of pressing charges against Wait. Indeed Wait appeared at two of the hearings prepared to testify. The State did not issue charges against Wait after any of those hearings, despite being aware of Barrett's plan to call Wait as a witness. In short, Wait's affidavit belies the record. Barrett has not met his burden of establishing outrageous government conduct.

¶36    For the foregoing reasons, we affirm.

*By the Court.*—Judgment and order affirmed.

16