STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert J. HYNDMAN, Defendant-Appellant.†

Court of Appeals

*No. 91–2256–CR. Submitted on briefs May 5, 1992.—Decided July 7, 1992.*

(Also reported in 488 N.W.2d 111.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Robert R. Henak* of *Shellow, Shellow & Glynn, S.C.,* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle,* attorney general, with *Marquerite M. Moeller,* assistant attorney general.

Before Moser, P.J., Sullivan and Fine, JJ.

SULLIVAN, J.   Robert J. Hyndman appeals from a judgment of conviction for solicitation to commit a felony, delivery of cocaine, in violation of secs. 161.41(1)(c), 161.16(2)(b)1, 939.30, and 939.05, Stats. (party to a crime). On appeal, Hyndman argues that the trial court committed reversible error by failing to grant his motion for summary dismissal of charges stemming from the State's outrageous conduct for initiating and

manufacturing this offense. Hyndman asserts that the failure of the trial court to grant the motion deprived him of his due process rights. We disagree and affirm.

Hyndman raises two reviewable issues on appeal:[1] (1) whether the trial court committed reversible error in denying Hyndman's motion for summary judgment to dismiss due to outrageous governmental conduct; and (2) whether the State's conduct as a matter of constitutional fact constituted outrageous governmental conduct warranting a reversal of the conviction.

## FACTS

The trial court, after an evidentiary hearing on Hyndman's dismissal motion, found the following facts, which are supported by the record. In January 1988, Hyndman, a licensed attorney, represented Brad Olson. At that time, Olson was in the Milwaukee County Jail. In the latter part of January or February, 1988, Olson told Hyndman that he wanted to work with the Narcotics Squad in an undercover capacity. Hyndman approached police detective Alan Wilkie. Detective Wilkie had met with Olson on a prior occasion, but did not know that Hyndman, a social and professional friend, represented Olson. Hyndman asked Detective Wilkie to appear at Olson's revocation of probation hearing at the

[1]Hyndman also asserts that the trial court abused its discretion and committed reversible error during the hearing on Hyndman's motion to dismiss by relying upon hearsay evidence in rendering its decision. Hyndman asserts that Detective Cesar's testimony about what Olson stated regarding a drug conspiracy between Hyndman and Olson is hearsay. This argument is undeveloped and appears with merely a general citation to sec. 908.02, Stats. (hearsay rule). We therefore need not address this issue. *W.H. Pugh Coal Co. v. State,* 157 Wis. 2d 620, 634, 460 N.W.2d 787, 792 (Ct. App. 1990), *review denied,* 464 N.W.2d 423 (1990).

House of Corrections to be of help in Olson's release so that he could assist the Narcotics Squad. Detective Wilkie appeared at the revocation hearing as agreed. The court granted revocation of Olson's probation.

Several weeks after the revocation hearing, Olson called Detective Wilkie to express his anger with Hyndman's performance at the hearing and his belief that Hyndman was under the influence of drugs or alcohol at the hearing. Olson told Detective Wilkie that Hyndman wanted to use Detective Wilkie to obtain his release from jail and, once released, Olson and Hyndman would work in unison to purchase and sell guns and drugs.

On the same day that Olson told Detective Wilkie of his conspiracy with Hyndman, Detective Wilkie met Detective James Cesar of the Milwaukee Police Department while in the offices of the vice squad. Detective Cesar testified that while talking with Detective Wilkie in the vice squad offices, Hyndman telephoned Detective Wilkie. Detective Cesar listened in on the conversation between Hyndman and Detective Wilkie by sharing the same telephone receiver with Detective Wilkie. Detective Wilkie testified that Hyndman told Detective Wilkie, "Don't do me, Al, don't do me. You and [the assistant district attorney] want to do me. Just don't do me." Detective Wilkie then referred the matter to Detective Cesar to avoid any conflict of interest.

Detective Cesar interviewed Olson over a month and a half after Olson originally complained to Detective Wilkie about Hyndman's representation at the hearing. Detective Cesar testified that Olson told him that Hyndman sought Olson's assistance in the acquisition and resale of cocaine in kilo lots.[2] Detective Cesar also

---

[2] Olson, according to Detective Cesar, contemplated setting

testified that Olson decided to arrange a cocaine transaction for Hyndman since he had not been contacted by any police detective. In this first drug arrangement, of which the police had no knowledge, Olson lined up a cocaine purchase for Hyndman in Chicago. Hyndman went to the wrong hotel and the drug transaction was never consummated. Olson and Detective Cesar then agreed that Cesar would act as a substitute for the Chicago cocaine source and arrange a second, now fictitious, drug transaction.

Olson subsequently telephoned Hyndman from the House of Corrections to arrange another cocaine transaction. Over the course of thirteen days, Detective Cesar, acting as a drug resource, made many telephone calls to Hyndman in an attempt to sell him cocaine. Hyndman explained to Cesar that he was having a difficult time securing enough money to complete the drug deal. As stated by the trial court: "Caesar [sic] expressed some impatience and Hyndman pleaded to be patient because he wanted to do a deal." An undercover officer gave Hyndman instructions to travel to a townhouse complex to purchase the desired amount of cocaine. Hyndman tendered $17,000 in cash to the officer and was immediately placed under arrest.

Hyndman and three co-defendants were charged with possession of cocaine with intent to deliver, as parties to a crime. Hyndman filed several pretrial motions, including a motion to suppress statements and a motion for summary disposition on the grounds of outrageous governmental conduct. After an evidentiary hearing, the trial court denied the motions. Hyndman's case was severed from his co-defendants and an amended information charging Hyndman with solicitation to commit a

up a deal to sell Hyndman cocaine, yet steal Hyndman's money before the delivery of any drugs.

felony, delivery of a controlled substance, was filed. Hyndman waived his right to a jury trial and the case was tried to the court. Hyndman was found guilty as charged in the amended information and was sentenced to thirty months imprisonment. It is from this judgment of conviction that Hyndman files this appeal.

## SUMMARY JUDGMENT

Hyndman argues that his dismissal motion should be treated as a motion for summary judgment as provided by sec. 802.08, Stats. (summary judgment). Hyndman contends he is entitled to a dismissal based upon outrageous governmental conduct because the State failed to file a counter-affidavit to his affidavit attached to the motion, thereby conceding the facts set forth in his own affidavit. Hyndman also asserts that the State implicitly concedes the factual allegations set forth in his brief in support of his motion because the State neither challenged nor controverted those allegations in its reply brief or in the form of an affidavit. Hyndman concludes that since the alleged facts are uncontroverted and implicitly conceded, there is a sufficient basis upon which to grant his motion to dismiss, which is therefore analogous to a motion for summary judgment in a civil case.

Hyndman relies on *State v. Bruckner,* 151 Wis. 2d 833, 864 n.15, 447 N.W.2d 376, 389 n.15 (Ct. App. 1989), and *Franks v. Delaware,* 438 U.S. 154, 161 (1978), for his proposition that summary judgment affidavits are relevant and appropriate for a motion to suppress in a criminal proceeding. He also relies on sec. 972.11(1), Stats. (applicability of civil rules to criminal proceedings) as an additional basis for this argument. Section 972.11(1)

provides: "[T]he rules of evidence and practice in civil actions shall be applicable in all criminal proceedings unless the context of a section or rule manifestly requires a different construction." Whether sec. 802.08, Stats. (summary judgment) is applicable to a criminal proceeding via sec. 972.11 is a question of law that this court decides without deference to the trial court. *See Crowley v. Knapp,* 94 Wis. 2d 421, 429-30, 288 N.W.2d 815, 819-20 (1980).

A felony complaint alleges the essential facts to prove the elements of the charged offense. Section 968.01(2), Stats. (criminal complaint). Once arrested, the defendant makes an initial appearance before a judge, sec. 970.01, Stats. (initial appearance), is entitled to a preliminary hearing for a determination of probable cause for the charged crime(s), sec. 970.03, Stats. (preliminary examination), and if probable cause is found, then the defendant is arraigned and enters a plea, sec. 971.05(4), Stats. (arraignment).[3] A defendant who pleads "not guilty" to the charges set forth in the Information, sec. 971.01, Stats. (filing of the information), denies the charges, thereby requiring the State to prove every element of the charged offense(s). *See* Wis J I—Criminal 110. A plea of "not guilty" creates material issues of fact for the trier of fact to decide. Summary judgment lies only when no material issues of fact exist and a party, as a matter of law, is entitled to judgment. Section 802.08(2), Stats.

Hyndman entered a plea of "not guilty," thus creating issues of fact to be determined at trial. Uncontroverted affidavits or uncontroverted alleged facts in a

---

[3]Section 971.06(1), Stats., provides for four pleas: guilty, not guilty, no contest (subject to court approval) and not guilty by reason of mental disease or defect.

brief in support of a motion to dismiss are not conclusive fact determinations in a criminal case. Hyndman's reliance upon *Bruckner* and *Franks* is misplaced. Both cases pertained to motions to suppress evidence seized as the result of a search warrant. In *Bruckner* and *Franks,* affidavits challenged the validity of the search warrants because the warrants' supporting affidavits contained knowingly-or recklessly-made false statements. *Bruckner,* 151 Wis. 2d at 863, 447 N.W.2d at 389; *Franks,* 438 U.S. at 161.

The sole purpose of the affidavits submitted by the defense in *Bruckner* and *Franks* was to induce the trial court to conduct an evidentiary hearing on the knowing or reckless disregard for the truth of the assertions in the warrant affidavits. *Franks,* 438 U.S. at 170. Furthermore, sec. 972.11(1), Stats., prescribes application of civil action rules to criminal proceedings unless the context of the statute manifestly indicates a different construction. Such is the case with sec. 802.08(1), Stats., which provides:

> **(1)** AVAILABILITY. A party may, within 8 months of the filing of a summons and complaint or within the time set in a scheduling order under s. 802.10, move for summary judgment on any claim, counterclaim, cross-claim, or 3rd party claim which is asserted by or against the party. Amendment of pleadings is allowed as in cases where objection or defense is made by motion to dismiss.

The context of sec. 802.08(1) manifestly requires that it not be applied to criminal actions. The words "summons . . . scheduling order . . . claim, counterclaim, cross-claim or 3rd party claim" are foreign to criminal pleadings and procedure and are solely within the domain of civil law. *See* ch. 802, Stats., CIVIL PROCE-

DURE—PLEADINGS, MOTIONS AND PRETRIAL PRACTICE.

In addition, summary judgment time constraints are entirely inconsistent with time constraints provided by statute for criminal proceedings. For instance, a defendant charged with a misdemeanor may demand a speedy trial, which must commence within sixty days of the initial appearance, and in the case of a felony, within ninety days of a demand for a speedy trial. Section 971.10(1) and (2), Stats. (speedy trial). Nothing in ch. 971, Stats., CRIMINAL PROCEDURE—PROCEEDINGS BEFORE AND AT TRIAL, extends time limits to accommodate a summary judgment motion that may be filed within eight months from the date the summons and complaint is filed. *See* sec. 802.08(1), Stats. We conclude, based on the context of sec. 802.08 and its inapplicability to time constraints of criminal procedure, that summary judgment rules do not apply to actions brought under the criminal code.

OUTRAGEOUS GOVERNMENTAL CONDUCT

Hyndman argues that the State was a manufacturer, rather than a detector, of his alleged crime. Hyndman asserts that his conviction resulted from the deliberate manufacture of a crime that never would have occurred in the absence of Olson's prodigious efforts to set Hyndman up. Hyndman concludes that Olson's creation of the crime was attributable to the State and denied Hyndman his rights to due process under the United States Constitution Amendment XIV and Wisconsin Constitution Article I, sec. 9. The trial court's determination of constitutional fact, i.e., a determination of constitutional rights, is reviewed by this court without def-

erence to the trial court. *See State v. Griffin,* 131 Wis. 2d 41, 62, 388 N.W.2d 535, 543 (1986), *affirmed,* 483 U.S. 868 (1987).

■■

The genesis of the concepts of entrapment and governmental abuse of power or outrageous governmental conduct is found in the Due Process Clause of the Fifth Amendment. *State v. Steadman,* 152 Wis. 2d 293, 301, 448 N.W.2d 267, 271 (Ct. App. 1989). A defendant is protected by the defense of entrapment "[i]f the result of the governmental activity is to 'implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission.' " *Hampton v. United States,* 425 U.S. 484, 490 (1976) (quoting *Sorrells v. United States,* 287 U.S. 435, 442 (1932)). A defense of "outrageous governmental conduct" or "governmental abuse of power" has never been applied by Wisconsin courts or by the United States Supreme Court. However, the Supreme Court in *United States v. Russell,* 411 U.S. 423 (1973), stated: "[W]e may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction . . .." *Id.* at 431–32. In *Steadman,* we acknowledged the existence of an outrageous governmental conduct defense and stated that in order for a defendant to properly assert it, he or she must assert that a specific constitutional right has been violated. *Steadman,* 152 Wis. 2d at 302, 448 N.W.2d at 271 (citing *Hampton,* 425 U.S. at 490).

In addition, an outrageous governmental conduct defense requires that the prosecution of a defendant must violate " 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process

208

Clause of the Fifth Amendment." *Russell,* 411 U.S. at 432 (citation omitted). In other words, outrageous governmental conduct "may arise where the government itself was so enmeshed in the criminal activity that prosecution of the defendant [could be] held to be repugnant to the American criminal justice system." *Steadman,* 152 Wis. 2d at 301, 448 N.W.2d at 271.

In applying the factors set forth in the United States Supreme Court and Wisconsin court opinions to this case, this court concludes, despite Hyndman's defense of outrageous governmental conduct, that his argument is at best an assertion of an "entrapment defense." *Steadman* requires that we reject Hyndman's outrageous government conduct argument because Hyndman does not assert that the State violated a specific constitutional right, such as a Fifth Amendment right against self-incrimination or a Sixth Amendment right to counsel. The record reflects that the trial court, in its oral decision, closely examined the issue of entrapment and concluded there was no State entrapment of Hyndman. Because the issue of entrapment was not argued on appeal, we will not address it. *See State v. McDonald,* 50 Wis. 2d 534, 538, 184 N.W.2d 886, 888 (1971) (a deliberate choice of strategy, even if it backfires, is a binding waiver on the defendant and this court).

*By the Court.*—Judgment affirmed.