STATE of Wisconsin, Plaintiff-Respondent,

v.

Clarence GIVENS, Defendant-Appellant.†

Court of Appeals

*No. 97–1248–CR. Submitted on briefs January 8, 1998.—Decided February 25, 1998.*

(Also reported in 580 N.W.2d 340.)

†Petition to review denied.

180

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert N. Meyeroff* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Gregory M. Posner-Weber*, assistant attorney general.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

ANDERSON, J. Clarence Givens appeals from a judgment of conviction for one count of party to the crime of delivery of cocaine, as a repeater, in violation of §§ 161.41(1)(cm)1 and 161.48, STATS., 1993–94, and three counts of delivery of heroin, as a repeater, in violation of §§ 161.41(1)(d)1 and 161.48, 1993–94 and an order denying his motion for a reduction of his prison sentence. On appeal, Givens argues that the State's use of an informant as a witness constitutes outrageous conduct and violates his due process rights; that a mistrial should have been granted when a State's witness testified that drugs were found in Givens' apartment because the reports were not supplied to the defense prior to the testimony; that a new trial should have been ordered when improper other acts evidence was deemed admissible; that there was insufficient evidence to support his conviction for one of the delivery counts; and that the trial court's failure to reduce Givens' sentence constitutes a misuse of discretion.

We conclude that because the government itself was unaware of and not enmeshed in the informant's continued use of drugs, the State's use of the informant does not constitute outrageous conduct. We further conclude that the trial court did not misuse its discre-

tion when it denied Givens' request for a mistrial, that Givens waived the issue he now raises as to the other acts evidence, and that there was sufficient evidence to support the conviction for party to the crime of delivery of cocaine. Lastly, we conclude that the trial court did not misuse its discretion when it sentenced Givens to 110 years in prison. We affirm the judgment and the order.

## BACKGROUND

On May 3, 1996, Givens was charged with one count of delivery of cocaine and three counts of delivery of heroin. The charges stemmed from four controlled drug buys which were arranged by the Wisconsin Division of Narcotics Enforcement (DNE) with an informant, Karen Franklin, between April 4 and April 29, 1996.[1] Givens pleaded not guilty and the matter was eventually tried to a jury.

At trial, Franklin testified to the four drug buys she made from Givens. Franklin explained that she was a heroin addict for about twenty years but is currently clean, and that she has known Givens for approximately twenty-five years and in that time she has purchased heroin from him. Franklin admitted that she used heroin during the time she was working

---

[1] Franklin began working for the DNE after she sold Agent Gary Smith fake heroin. DNE had information that Franklin was a drug user and she had ties to individuals who were convicted drug dealers and also people who were heroin traffickers in Kenosha, Wisconsin. Franklin signed an agreement that she would work undercover for the government and that she would not "possess any controlled substance unless under the direction and control of DNE in the course of an official investigation." Franklin was told she might be and she was in fact compensated for her cooperation.

186

undercover for the government in violation of their agreement. However, Franklin also stated that she never informed the agents that she was using heroin. In fact, Agent Gary Smith testified that he routinely asked her if she was using heroin and she answered no.

Both DNE agents who worked with Franklin also testified. Agent Gilbert Magolan, who was Franklin's control officer, testified to the controlled drug buys in which Franklin participated. Magolan also executed a search warrant on May 1, 1996, at which time Givens, who was present in the apartment, was arrested and substances suspected to be cocaine and heroin and other evidence of narcotics were confiscated. The substances were field tested by Magolan; they tested positive for cocaine and heroin.

The jury found Givens guilty, as a repeat offender, on all four counts. On September 27, 1996, Givens was sentenced to the maximum on each count totaling 110 years in prison and judgment was entered accordingly. Givens filed a postconviction motion seeking a reduction of his sentence from 110 years to a sentence of 55 years (as recommended by the assistant district attorney) or some other lesser term. The trial court by an order dated April 5, 1997, denied Givens' motion. Givens appeals both the judgment of conviction and the order denying postconviction relief. Additional facts will be included within the body of the decision as necessary.

### DISCUSSION

### *Use of Informant*

Givens first argues that the State's use of Franklin, a DNE informant, as a witness constitutes outrageous conduct and violated his due process rights.

The State counters that Givens waived any right to raise the defense of outrageous governmental conduct on appeal because he failed to raise this defense in the trial court.

■

Even though Givens concedes he did not raise the issue, the waiver rule is not absolute. It is a rule of judicial administration and does not deprive this court of the power to address the waived issue, *see Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140, 145–46 (1980), especially where there are no factual issues which require resolution, *see State v. Skamfer*, 176 Wis. 2d 304, 311, 500 N.W.2d 369, 372 (Ct. App. 1993). Because the State does not controvert the fact that Franklin blatantly violated her agreement with the government or the fact that once the government became aware of her conduct at the preliminary hearing it continued to use her at the trial, we will discuss the issue on the merits. " 'Whether the government has stepped beyond permissible constitutional bounds in attempting to enforce the law is a legal question, not a factual one,' " which we review de novo. *United States v. Davis*, 15 F.3d 1393, 1415 (7th Cir. 1994) (quoted source omitted).

■

The concept of outrageous governmental conduct originates from the Due Process Clause of the Fifth Amendment. *See State v. Hyndman*, 170 Wis. 2d 198, 208, 488 N.W.2d 111, 115 (Ct. App. 1992). The defense of outrageous governmental conduct requires an assertion by the defendant that the State violated a specific constitutional right and that the government's conduct is so enmeshed in a criminal activity that prosecution of the defendant would be repugnant to the American

188

criminal justice system. *See State v. Gibas*, 184 Wis. 2d 355, 360, 516 N.W.2d 785, 786–87 (Ct. App. 1994).

Givens posits that "the conduct of the government in using [Franklin's] testimony after she admitted using government money to buy heroin and using heroin while she was allegedly making buys from [Givens] . . . [all] in violation of her agreement with the government not to use heroin violates fundamental fairness and shocks the concept of justice." Although Wisconsin courts have not addressed this issue, federal courts have.[2] In *United States v. Simpson*, 813 F.2d 1462, 1470 (9th Cir. 1987), the court stated:

> We find no authority supporting the defendant's claim that the continued use of an informant known to be committing unrelated crimes without the government's urging or approval raises due process concerns. . . . This court has held that "[g]overnment agents may approach people already engaged in or contemplating criminal activity" to employ them as informants. Thus the mere fact that [the informant] continued to use heroin and engage in prostitution during the investigation of [the defendant] did not oblige the FBI to stop using her as an informant. Indeed, government agents can go

[2] As noted by the Seventh Circuit, the use of unsavory informants such as Franklin in undercover police investigations is " 'an unattractive business, but that is the nature of the beast. . . .' " *United States v. Davis*, 15 F.3d 1393, 1415 (7th Cir. 1994) (quoted source omitted). "That the informants are used and are paid to provide information is not *per se* outrageous; in fact it is a necessity of crime fighting, as much as we might find it distasteful." *Id.* at 1416. Even so, Franklin's credibility is a matter for the jury to determine and the jury was instructed to consider the intelligence of each witness, the possible motives for falsifying and all other facts which tended either to support or to discredit the testimony.

so far as to direct an informant to participate in the very criminal enterprise that is under investigation. [Quoted source omitted; citation omitted.]

■

Similarly, in this case the government was not enmeshed in or aware of Franklin's heroin use. Prior to working with the government, Franklin was acquainted with Givens through her previous purchases of heroin and crack cocaine from him. At trial, Franklin admitted that she was using heroin and crack cocaine while working with the government in violation of their agreement. However, she also testified that she never informed the agents that she was using heroin nor did she ask them for money to buy controlled substances. We conclude that the government's use of Franklin as a witness against Givens, even though she used heroin in violation of her agreement with the government while making purchases, does not alone amount to a violation of fundamental fairness that shocks the universal sense of justice.

■

Further, in order for a defendant to successfully assert a claim of outrageous governmental conduct, he or she must assert that a specific constitutional right has been violated. *See Hyndman*, 170 Wis. 2d at 208, 488 N.W.2d at 115. However, Givens does not identify a specific constitutional right violated by the State's allegedly outrageous conduct, such as a Fifth Amendment right against self-incrimination or a Sixth Amendment right to counsel. *See id.* at 209, 488 N.W.2d at 116. We conclude that there is no arguable merit to a claim that Givens' due process rights were violated by outrageous government conduct.

## Lab Reports

Givens next argues that a mistrial should have been granted when a government agent testified that suspected contraband found at the scene of his arrest had tested positive for drugs. Givens complains that this information was not provided to him prior to trial, the information corroborated Franklin's testimony and it was devastating to the defense. He insists that a new trial was necessary to allow him "time to analyze the lab reports and test the substances described in those lab reports."

Whether to grant a motion for a mistrial is within the trial court's discretion. *See State v. Bunch*, 191 Wis. 2d 501, 506, 529 N.W.2d 923, 925 (Ct. App. 1995). The trial court must determine, in light of the entire proceeding, whether the basis for the mistrial motion is sufficiently prejudicial to warrant a new trial. *See id.* However, not all errors warrant a mistrial and "the law prefers less drastic alternatives, if available and practical." *Id.* at 512, 529 N.W.2d at 927. A mistrial is appropriate only when a " 'manifest necessity' " exists for the termination of the trial. *See id.* at 507, 529 N.W.2d at 925 (quoted source omitted).

On cross-examination, agent Magolan testified that the alleged contraband found in Givens' residence during the execution of a search warrant was tested by the crime lab and was in fact heroin and cocaine. Magolan explained that just prior to trial he realized he did not have the lab reports, so he called the crime lab and had it fax the results to him. They were not provided to defense counsel.

At this point, the jury was excused and proceedings were held outside the presence of the jury. Defense counsel requested a mistrial because part of his

191

defense strategy was to argue that "[Givens] was not involved in any provable way with narcotics and dangerous drugs . . . [and] [n]ow I am told in cross-examination of Special Agent Magolan that . . . it's drugs." The trial court denied the motion, but offered defense counsel an adjournment to allow him to determine whether there was "a safe or an accurate analysis of this material." The opportunity for an adjournment to seek additional testing was declined. The reports were not admitted into evidence; only the agent's statement "I did find cocaine and heroin in that residence" was allowed.

The trial court offered Givens the very remedy, i.e., "time to analyze the lab reports," that he now claims requires a new trial. We conclude that the trial court did not misuse its discretion in denying the motion for a mistrial and took the appropriate steps to address whatever prejudicial effect arose from the agent's testimony.

Givens' reliance on *Wold v. State*, 57 Wis. 2d 344, 204 N.W.2d 482 (1973), is misplaced as well. The *Wold* court discussed the prosecutor's continual duty of disclosure as mandated by § 971.23, STATS.[3] one purpose

---

[3] Section 971.23(1), STATS., provides in pertinent part:

Upon demand, the district attorney shall, within a reasonable time before trial, disclose to the defendant . . . all of the following materials and information, if it is within the possession, custody or control of the state:

. . . .

(e) . . . [A]ny reports or statements of experts made in connection with the case . . . and the results of any . . . scientific test . . . that the district attorney intends to offer in evidence at trial.

. . . .

of which is to avoid surprise to the defense, especially in the area of scientific evidence. *See Wold,* 57 Wis. 2d at 350–51, 204 N.W.2d at 487. However, the court continued:

> [N]ot all evidence which should be disclosed to the defendant need be excluded. The harm may be slight and avoided by a short adjournment to allow the defendant to investigate or acquire rebutting evidence. The penalty for breach of disclosure should fit the nature of the proffered evidence and remove any harmful effect on the defendant.

*Id.* at 351, 204 N.W.2d at 487–88. In fact, the *Wold* court determined that even though the evidence should not have been admitted, its admission constituted harmless error. *See id.* at 358, 204 N.W.2d at 491.

We also conclude that if any error occurred, it was harmless. Our review of a claimed discovery violation under § 971.23, STATS., is subject to a harmless error analysis. *See State v. Koopmans,* 202 Wis. 2d 385, 396, 550 N.W.2d 715, 720 (Ct. App. 1996), *aff'd,* 210 Wis. 2d 671, 563 N.W.2d 528 (1997). The test of harmless error is whether the appellate court in its independent determination can conclude there is sufficient evidence, other than and uninfluenced by the inadmissible evidence, which would convict the defendant beyond a reasonable doubt. *See Wold,* 57 Wis. 2d at 356, 204 N.W.2d at 490. Magolan testified that the contraband found during execution of the search warrant was

---

(h)　Any exculpatory evidence.

In this case, the lab reports did not provide exculpatory evidence. In addition, the prosecutor did not intend to offer the reports into evidence and they were in fact not offered into evidence. Thus, disclosure was not mandatory.

packaged exactly the same as the heroin obtained by Franklin. He further stated that he performed field tests on the items discovered from the search warrant which tested positive for drugs. We conclude that without consideration of the agent's statement that the lab reports came back positive for drugs, this evidence would be sufficient in the minds of a jury to convict Givens.

## Agent's Testimony

Givens also contends that a new trial should be allowed due to the admission of improper other acts evidence. During trial, Smith was asked, "What specifically were you told [by Franklin] regarding [Given's] involvement with heroin?" Givens objected on hearsay grounds. The trial court adopted the prosecutor's argument that "it's being offered . . . as a prior consistent statement with [Franklin's] statement that this defendant was involved with heroin and she informed the DNE of that." The court allowed Smith to testify that in February 1996, Franklin identified Givens as a heroin trafficker who actually supplied the heroin from Illinois that was later resold to others in the Kenosha area.

The admission of evidence is generally within the discretion of the trial court. *See State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983). We review a trial court's ruling on the admissibility of evidence for a misuse of discretion. *See State v. Buelow*, 122 Wis. 2d 465, 476, 363 N.W.2d 255, 261 (Ct. App. 1984). To sustain a discretionary ruling, we need only find that the trial court examined the relevant facts, applied a proper standard of law and, using a rational process,

194

reached a reasonable conclusion. *See Franz v. Brennan*, 150 Wis. 2d 1, 6, 440 N.W.2d 562, 564 (1989).

The trial court overruled Givens' objection concluding that the testimony was offered as a prior consistent statement with Franklin's statement under § 908.01(4)(a)2, STATS. A statement is not hearsay if the declarant (1) testifies at trial, (2) is subject to cross-examination, (3) the statement is consistent with the declarant's testimony and (4) is offered to rebut an express or implied charge against the declarant of recent fabrication. *See id.*

Here Franklin did testify at trial, she was subject to cross-examination, Smith's statement was consistent with Franklin's testimony and Franklin was challenged during her testimony by Givens. We find no misuse of discretion.[4]

## *Sufficiency of the Evidence*

Givens next argues that there was insufficient evidence to convict him of party to the crime of delivery of a controlled substance relating to the April 4, 1996 drug sale. Franklin testified that at the April 4 controlled drug buy, she entered the residence and told Givens and an accomplice, John Lambert, that she wanted two bags of heroin and two rocks of crack

[4] Although Givens now argues that the testimony was improper other acts evidence, he did not make this argument at trial. Rather, he argued that this evidence was inadmissible hearsay. Because hearsay was the only stated ground for an objection at trial, we conclude that all other arguments have been waived for failure to state them with specificity before the trial court. *See State v. Peters*, 166 Wis. 2d 168, 174, 479 N.W.2d 198, 200 (Ct. App. 1991). Accordingly, we will not specifically address Givens' other acts evidence argument.

cocaine. During the sale, Lambert indicated that the crack cocaine belonged to Givens. Then as Franklin was leaving, Givens asked her if she had been "taken care of" and "[Givens] told me that it was his." However, on cross-examination, Franklin stated that she was not sure when she purchased drugs from Givens. Nor was Givens mentioned in Franklin's written statement describing the drug buy.

■■

We review the sufficiency of evidence using the following standard:

> [A]n appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

*State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757–58 (1990) (citation omitted).

The elements necessary to prove the offense of party to the crime of delivery of a controlled substance are: (1) that the defendant delivered a substance, (2) that the substance was heroin or cocaine, and (3) that the defendant knew or believed that the substance was heroin or cocaine. *See* Wis J I—Criminal 6020. Franklin testified that she went to the residence to purchase heroin and cocaine, that Lambert completed the transaction and that when she was leaving Givens asked whether she had been "taken care of" and informed her

that the cocaine was his. The lab reports verified that the substances were in fact controlled substances. A jury could reasonably conclude that Givens delivered the controlled substances, that he knew or believed the substances to be cocaine and that the substances were in fact cocaine.

Nevertheless, Givens maintains that the only evidence on this count came from Franklin and her testimony was contradictory. The jury heard Franklin's testimony and chose to accept her statement that Givens indicated that the drugs were his, despite the cross-examination tending to diminish the basis for her statement. The jury is the sole judge of witness credibility. *See State v. Toy*, 125 Wis. 2d 216, 222, 371 N.W.2d 386, 389 (Ct. App. 1985). In addition, as the State points out, the jury also had crime lab reports remarking that the substances sold to Franklin were in fact cocaine and heroin. We conclude that the jury, acting reasonably, could conclude beyond a reasonable doubt that Givens was a party to the crime of delivery of a controlled substance.

## Modification of Sentence

Lastly, Givens argues that the failure of the trial court to reduce his sentence from 110 years to a lesser prison term constitutes a misuse of discretion. Givens insists that he was not the head person in a drug ring, he was not vicious, threatening or violent, and he was charged with selling very small amounts of cocaine and heroin; thus, the imposition of the maximum sentence was unreasonable.

While consideration of mitigating factors is appropriate, on appeal our review is limited to whether the

197

trial court erroneously exercised its sentencing discretion. *See State v. Larsen*, 141 Wis. 2d 412, 426, 415 N.W.2d 535, 541 (Ct. App. 1987). The primary factors are the gravity of the offense, the character of the offender, and the need for public protection. *See id.* at 427, 415 N.W.2d at 541. The weight to be given each factor is within the trial court's discretion. *See Cunningham v. State*, 76 Wis. 2d 277, 282, 251 N.W.2d 65, 67–68 (1977). Although the trial court could have properly imposed a lesser sentence, its imposition of the maximum does not necessarily indicate a misuse of discretion.

In denying his motion for sentence modification, the trial court noted that Givens has a long criminal record which includes violent offenses and a history of drug-related offenses. The trial court, in referring to the presentence investigation report, considered Givens' lack of "remorse for the severity of these crimes," his failure to account for permanent employment since 1975, and his aversion to obtain employment although able-bodied. The trial court also discussed the serious impact of heroin and cocaine on society. Further, the trial court considered

> the need to send a clear and unequivocal message to all the other genocidal merchants of death that they can expect no leniency from the courts if they persist in their vile behavior, and a message to those struggling to raise their children in neighborhoods ruled by violence and drugs that the courts will deal harshly with those who drain the lifeblood of their neighborhoods.

The trial court considered the appropriate factors. Based on the seriousness of the crime, the sentence was not unduly harsh or unconscionable.

*By the Court.*—Judgment and order affirmed.