# COURT OF APPEALS
## DECISION
## DATED AND FILED

## August 13, 2024

**Samuel A. Christensen**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** 2023AP332-CR
2023AP333-CR
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2015CF5586
2016CF1726

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DIMITRI L. MOSS,

DEFENDANT-APPELLANT.

APPEALS from judgments and an order of the circuit court for Milwaukee County: CYNTHIA M. DAVIS and MICHELLE A. HAVAS, Judges. *Affirmed*.

Before Donald, P.J., Geenen and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Dimitri L. Moss appeals his judgments of conviction and the order of the circuit court denying his motion for postconviction relief without a hearing.[1]  He argues that the prosecutor engaged in misconduct, his trial counsel was ineffective for failing to object to that misconduct, and he is entitled to a new trial or, alternatively, a *Machner*[2] hearing.  We disagree with Moss and affirm.

## BACKGROUND

¶2     One evening in December 2015, T.B.[3] was sitting in her vehicle with a friend when Moss pulled next to them in his vehicle.  T.B. had recently ended her long-term romantic relationship with Moss.  T.B. became fearful and drove to the police station, and Moss followed her.  At the police station, Moss parked next to T.B., pointed a gun at her car, and demanded that she and her friend exit her vehicle.  Her friend exited and departed, but T.B. refused.  T.B. eventually agreed to follow Moss to a different location, where T.B. stopped at a gas station and parked in front of the convenience store hoping to draw attention to Moss.  Moss parked next to T.B., again drew his gun, and ordered T.B. to exit.  T.B. accelerated trying to escape, and as she took off, Moss fired his gun, hitting T.B.'s vehicle.

¶3     T.B. drove to a nearby bar, exited her car, and called a friend.  A security guard overheard T.B. explaining to her friend what had happened and called

---

[1]  The Honorable Cynthia M. Davis presided over Moss's trial.  The Honorable Michelle A. Havas considered and denied Moss's postconviction motion.  Both are referred to as the "circuit court."

[2]  *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[3]  We use initials to refer to the victim in this case "to better protect the privacy and dignity interests of crime victims."  WIS. STAT. RULE 809.86(1) (2021-22).

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

the police.  Moss arrived and tried to drag T.B. into his vehicle, but she resisted.  T.B. left in her car, and Moss followed beside her in his vehicle.

¶4      Detective Michael Martin came upon Moss and T.B. driving side-by-side while on patrol in his squad car.  He identified the two vehicles from a radio report as having been involved in an incident, and coupled with Moss's erratic driving, Detective Martin decided to stop Moss's vehicle.  Moss fled.

¶5      Detective Martin pursued Moss for five miles before disengaging the chase, but moments later, he found Moss's vehicle crashed at a nearby intersection.  Moss was lying outside the open driver's door in the street, and Detective Martin found a revolver on the floor of the vehicle's front passenger seat with three bullets in the chamber, and three spent shell casings.  Moss's DNA was later detected on the revolver's handle and cylinder.  The State charged Moss with being a felon in possession of a firearm, endangering safety by use of a dangerous weapon, first-degree recklessly endangering safety by use of a dangerous weapon, and fleeing an officer, all with a habitual criminality repeater.

¶6      Moss was held in custody prior to trial.  He frequently communicated with T.B. by phone and by letter, but two phone calls caught the attention of police.  The first call occurred on February 28, 2016.  Investigator Paul Bratonja identified two concerning excerpts in the call.  In the first excerpt, Moss told T.B. to "[s]tay far away from that shit," referring to his criminal proceedings.  As Moss described the plan: "no face, no case."  In the second excerpt, Moss directed T.B. to go to his "PO" (i.e., probation officer) and ensure that the PO dropped Moss's probation "hold" once the charges in the present case were dropped.

¶7      The second call occurred on April 6, 2016.  Moss instructed T.B. to prepare a letter recanting her accusations, sign it, and have it notarized.  Later that

day, T.B. delivered a notarized letter recanting her accusations to the District Attorney's Office. The State charged Moss in a second case with two counts of felony intimidation of a witness as a repeater, and the complaint transcribed the relevant excerpts from both calls.

¶8 The two cases were consolidated for trial, and T.B. testified consistently with the foregoing facts. She did not recant, and she explained that she falsely recanted only because she feared adverse consequences from Moss if she testified. Detective Martin, the DNA analyst who tested the revolver, and Investigator Bratonja also testified. The State presented additional evidence that corroborated T.B.'s testimony, including surveillance footage from the gas station and the bar, photographs of the bullet damage sustained by T.B.'s car, and a letter from Moss to T.B. written while he was in pretrial custody asking for her "loyalty" and hoping that she would not "make any unforgivable decisions."

¶9 Outside the presence of the jury, the State announced its plan to play the February 28 and April 6 calls. The prosecutor reminded the circuit court and Moss that the State had transcribed the parts that would be played in the complaint. When asked whether he objected to the February 28 call "referenced in the criminal complaint," Moss's counsel replied, "I don't see that I have a basis to object to that." Moss objected only to certain portions of the April 6 call in which he discussed finishing his term of probation. The prosecutor agreed to redact those parts. At trial, Investigator Bratonja introduced and authenticated the calls by explaining how the Milwaukee County Jail phone system operates. All calls are recorded, and each inmate uses the booking number assigned upon entry as his or her PIN in the phone system. Each call generates a call log documenting the number called, the date and time of the call, and the inmate caller's PIN. Referring to the call logs for the February 28 and April 6 calls, Investigator Bratonja confirmed that Moss called T.B.

4

¶10 The prosecutor played the first excerpt from the February 28 call without incident, but shortly after the second excerpt from the same call started playing, Moss objected. The parties agree that, at most, the jury heard Moss say: "If—if you—if you get a chance to talk to my—If you get a chance to talk to my PO, or whatever, she should drop the hold before I go to court, or whatever." The parties disputed whether the excerpt stopped after the word "PO" or "hold."

¶11 Moss moved for a mistrial, arguing that this second excerpt was inadmissible because it referred to his probation and that the prosecutor engaged in misconduct because the prosecutor had agreed to redact any such references from both calls. The prosecutor asserted that he had not intended to present evidence of Moss's probation status. He stated that he did not know that the call mentioned a "PO" because he had not listened to the call in a while. He noted that he had paused the call as soon as he heard "objection," and that any delay arose from an unavoidable lag in the courtroom audio software. He also argued that the second part of the February 28 call was admissible.

¶12 The circuit court denied the motion for a mistrial. It ruled that the second excerpt from the February 28 call was inadmissible but that the prosecutor did not engage in misconduct by playing it. It found that the prosecutor acted in good faith because Moss had previously consented to its admissibility by objecting only to the April 6 call. Because the prosecutor acted in good faith, he did not engage in misconduct. The circuit court was uncertain if the jury heard the call all the way to "hold," but even if it had, Moss suffered only minor prejudice that did not justify a mistrial. The jurors might not have understood that "PO" and "hold" referred to probation. The jury already knew that Moss had been in pretrial custody because he made these calls from jail, and it also already knew Moss had a criminal history because the parties stipulated to his prior felony conviction.

5

¶13    The circuit court offered to issue a cautionary instruction, but Moss declined and instead requested that the circuit court simply announce "objection sustained" when the jury returned, and the circuit court granted this relief.  The jury found Moss guilty of all but one of the charges, acquitting him only of witness intimidation for the April 6 phone call.  The circuit court sentenced Moss to an aggregate prison term of seventeen and one-half years of initial confinement and fourteen years of extended supervision.

¶14    Moss filed motions for postconviction relief in both of his cases.  He renewed his claim of prosecutorial misconduct and his motion for a mistrial, and he raised an additional claim of ineffective assistance of counsel.  He argued that trial counsel was ineffective for not objecting to the second part of the February 28 call before it was played at trial, and for not objecting to repeated references to Moss's custodial status and status as a convicted felon in both trial testimony and the prosecutor's closing argument.

¶15    The circuit court denied these claims without a hearing.  Moss appeals from both judgments of conviction and the order denying his postconviction motion, reiterating his arguments that the prosecutor engaged in misconduct, that his trial counsel was ineffective for failing to object to that misconduct, and that he is entitled to a new trial or, alternatively, a *Machner* hearing.

## DISCUSSION

**I.    The circuit court reasonably exercised its discretion in finding that the prosecutor acted in good faith, and any misconduct was harmless.**

¶16    Moss argues that the prosecutor engaged in misconduct by playing the second half of the February 28 call and by making and eliciting testimony that made references to Moss's custodial status and that he was a convicted felon.

6

¶17    "Prosecutorial misconduct 'can rise to such a level that the defendant is denied his or her due process right to a fair trial.'" *State v. Lettice*, 205 Wis. 2d 347, 352, 556 N.W.2d 376 (Ct. App. 1996) (citation omitted).  However, reversing a conviction on the basis of prosecutorial misconduct is a "drastic step," *State v. Ruiz*, 118 Wis. 2d 177, 202, 347 N.W.2d 352 (1984), and is reserved for cases where the misconduct "poison[ed] the entire atmosphere of the trial," *Lettice*, 205 Wis. 2d at 352 (citation omitted).  "The determination of whether prosecutorial misconduct occurred and whether such conduct requires a new trial is within the [circuit] court's discretion." *Id.*  We will sustain a discretionary act if the circuit court "'examined the relevant facts, applied a proper standard of law, and used a rational process to reach a conclusion that a reasonable judge could reach.'"  *Id.* (citation omitted). Even when misconduct occurs, reversal is not warranted if the State proves beyond a reasonable doubt that the error was harmless.  *State v. Stietz*, 2017 WI 58, ¶63, 375 Wis. 2d 572, 895 N.W.2d 796; *see also State v. Patterson*, 2010 WI 130, ¶64, 329 Wis. 2d 599, 790 N.W.2d 909.  Whether an error is harmless presents a question of law that we review *de novo*.  *State v. Hunt*, 2014 WI 102, ¶21, 360 Wis. 2d 576, 851 N.W.2d 434.

¶18    Here, the circuit court did not erroneously exercise its discretion when it determined that the prosecutor acted in good faith and no misconduct occurred. The circuit court noted that although the parties had previously discussed excluding information related to Moss's probationary status, defense counsel had objected only to the transcript of the April 6 call and did not specifically object to the second part of the February 28 call.  The record reflects that the prosecutor promptly paused the call after Moss objected, even if a small portion of the call continued to play after the prosecutor hit pause.  Given these circumstances, we conclude that the

7

circuit court did not clearly err in finding that the prosecutor acted in good faith and no misconduct occurred.

¶19    Moreover, we conclude that any prejudice that Moss might have suffered as a result of the playing of the second half of the February 28 call was harmless.  An error is harmless if it is clear beyond a reasonable doubt that the jury would still have found the defendant guilty absent the error.  *State v. Mayo*, 2007 WI 78, ¶47, 301 Wis. 2d 642, 734 N.W.2d 115.  Factors relevant to this analysis include the importance of any erroneously admitted evidence and the overall strength of the State's case.  *Id.*, ¶48.

¶20    We conclude that the second part of the February 28 call mentioning Moss's probation could not have plausibly influenced the jury's verdict.  As the circuit court correctly noted, the excerpt only obliquely referred to Moss's probation status through the words "PO" and "hold," words that the jurors may not have even understood.  The rest of the excerpt is unremarkable, and the jury ultimately knew from the stipulation and other evidence that Moss had made the calls while incarcerated and had a prior felony conviction.

¶21    On the other hand, there was substantial evidence of Moss's guilt. T.B. gave detailed testimony about how Moss harassed her and shot at her car, which was corroborated by surveillance footage.  Police saw Moss in his vehicle driving next to T.B.'s vehicle, and when police signaled for Moss to stop, he fled and instigated a chase.  When police later found Moss after he crashed his car, a partially loaded revolver was found on the front passenger seat floor.  Three bullets had been fired, and Moss's DNA was identified on the handle and cylinder. Moreover, Moss's letter to T.B. asking for her "loyalty" and the first part of the February 28 call where he told T.B. to disregard her subpoena to testify in his

criminal proceedings revealed Moss's consciousness of guilt. We conclude that any error related to the playing of the second excerpt of the February 28 call was harmless beyond a reasonable doubt.

¶22 Moss also complains that the prosecutor engaged in misconduct by eliciting testimony and directly referencing Moss's custodial status and his prior felony conviction.

¶23 The prosecutor and Investigator Bratonja used words like "jail," "booking number," and "inmate" in order to discuss the Milwaukee County Jail's phone system. However, none of these references were impermissible. Using these words was incidental to but necessary for understanding how the Milwaukee County Jail's phone system worked, and knowing how the phone system worked was necessary in order to establish the dates of the calls and that Moss was the speaker.

¶24 As to the prosecutor's references during closing argument to Moss being a convicted felon, "a prosecutor may comment on the evidence, argue to a conclusion from the evidence, and may state that the evidence convinces him or her and should convince the jury." *Mayo*, 301 Wis. 2d 642, ¶43. This is exactly what the prosecutor did: he noted that one of the elements of being a felon in possession of a firearm is that the defendant is a "convicted felon;" he explained that Moss is a "convicted felon" and that this was "not a point of contention;" and he ended with a brief summary reiterating the elements of the crime and that Moss was a "convicted felon."

¶25 We agree with the circuit court and conclude that the prosecutor's questioning of Investigator Bratonja and the statements during closing arguments did not constitute prosecutorial misconduct. Additionally, and for the same reasons set forth above, we conclude that the references were harmless. The State's

9

evidence was overwhelmingly strong, and any prejudice that could conceivably arise from the challenged references was minimal.

¶26 In sum, the circuit court's finding that the prosecutor acted in good faith and no misconduct occurred was not clearly erroneous. Moreover, any misconduct that may have occurred, either as a result of the playing of the second part of the February 28 call or the references to Moss's custodial and felon statuses, was harmless beyond a reasonable doubt.

## II. Trial counsel was not ineffective.

¶27 In rejecting Moss's ineffective assistance challenges without a hearing, the circuit court applied the two-pronged test for deficient performance and prejudice established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "When a circuit court summarily denies a postconviction motion alleging ineffective assistance of counsel without holding a *Machner* hearing, the issue for the court of appeals ... is whether the defendant's motion alleged sufficient facts entitling [the defendant] to a hearing." *State v. Sholar*, 2018 WI 53, ¶51, 381 Wis. 2d 560, 912 N.W.2d 89. However, even if the motion alleges specific facts, "an evidentiary hearing is not mandatory if a defendant's motion presents only conclusory allegations or if the record as a whole conclusively demonstrates that the defendant is not entitled to relief." *State v. Ruffin*, 2022 WI 34, ¶38, 401 Wis. 2d 619, 974 N.W.2d 432.

¶28 To establish deficient performance, the motion must specifically allege more than that counsel's performance was "imperfect or less than ideal." *State v. Balliette*, 2011 WI 79, ¶22, 336 Wis. 2d 358, 805 N.W.2d 334. There is a strong presumption that counsel performed reasonably, and the question is "whether

the attorney's performance was reasonably effective considering all the circumstances." *Id.*, ¶¶22, 25-28.

¶29 The motion must also allege prejudice, i.e., "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In order to satisfy this prong, the defendant must allege more than "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. "[R]ank speculation" is insufficient. *State v. Erickson*, 227 Wis. 2d 758, 774, 596 N.W.2d 749 (1999). We need not address both prongs "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

¶30 Whether a postconviction motion is sufficient on its face to require an evidentiary hearing and whether the record conclusively demonstrates that the defendant is not entitled to relief are both questions of law that we review independently of the circuit court while benefiting from its analysis. *Ruffin*, 401 Wis. 2d 619, ¶27; *Balliette*, 336 Wis. 2d 358, ¶18.

¶31 Moss argues that counsel was ineffective for failing to object to the February 28 call and for failing to object to references to his custodial status and prior felony conviction. We reject Moss's arguments because the record conclusively demonstrates that Moss was not prejudiced. As explained above, the potential prejudice stemming from the partially played second excerpt of the February 28 call and the references to Moss's custodial status and prior felony conviction does not create a reasonable probability that the result of the trial would have been different but for trial counsel's failure to object. The State's evidence against Moss was overwhelming, and if any prejudice arose at all, it was *de minimis*.

11

Accordingly, we reject Moss's ineffective assistance claims and conclude that he is not entitled to a new trial or a *Machner* hearing.[4]

## CONCLUSION

¶32 We conclude that the circuit court did not clearly err in finding that the prosecutor did not engage in misconduct. Moreover, we conclude that even if misconduct occurred, and trial counsel was deficient for failing to object to it, Moss suffered no prejudice. We further conclude that Moss was not prejudiced by references to his custodial status or prior felony conviction. There is no reasonable probability of a different result, and the alleged errors were harmless beyond a reasonable doubt.

*By the Court.*—Judgments and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] Moss also argues that the circuit court erroneously exercised its discretion when it denied his motion for a mistrial on the basis of prosecutorial misconduct. "[N]ot all errors warrant a mistrial," so "[t]he [circuit] court must determine, in light of the entire proceeding, whether the basis for the mistrial motion is sufficiently prejudicial to warrant a new trial." *State v. Givens*, 217 Wis. 2d 180, 191, 580 N.W.2d 340 (Ct. App. 1998). As we explained, we conclude that any conceivable prejudice stemming from the alleged prosecutorial misconduct was harmless beyond a reasonable doubt, and for that reason, we conclude that the circuit court did not erroneously exercise its discretion when it denied Moss's motion for a mistrial.